United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. |
| JOSEPH A. YERARDI, JR., | ) | 93-10278-NMG |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Non-parties Amir Kayvon Bina and Joseph Kaveh Yerardi (jointly, "the movants"), sons of defendant Joseph A. Yerardi, Jr. ("Yerardi"), have moved to vacate or, in the alternative, to modify the restraining order entered by this Court freezing the funds in Account No. 400882 at EFG Bank von Ernst AG in Liechtenstein.

**I. Background**

In May 1995, Yerardi pled guilty to multiple violations of The Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. § 1961, et seq., stemming from his operation of an illegal loansharking and gambling organization. He was sentenced to 135 months in prison and ordered to forfeit $916,000 to the United States ("the 1995 forfeiture order"). At sentencing, District Judge Robert Keeton imposed a restraining order ("the 1995 restraining order") on four Canadian bank

-1-

accounts found to have been linked with the racketeering organization ("the Canadian assets"). To date, the forfeiture judgment remains unpaid.

While imprisoned, Yerardi continued to supervise his racketeering operation through proxies. Between 1998 and 2004, his wife, Rafia Feghi ("Feghi"), received proceeds from the business, using the money to pay for her condominium, the education of her son Joseph Kaveh Yerardi ("Joseph Kaveh") and personal expenses. In 2005, Joseph Kaveh and Feghi pled guilty to money laundering and racketeering. Joseph Kaveh was sentenced to 100 months in prison and Feghi was given two years' probation. In 2009, upon the retirement of Judge Keeton, the initial Yerardi case and the related prosecutions springing from it were transferred to this Session.

In March 2010, the United States government was notified by Liechtensteiner law enforcement of suspicious activity associated with a bank account owned by Feghi at EFG Bank von Ernst AG in Vaduz, Liechtenstein. In 2000, $840,000 was transferred to Account No. 300.198, an account held in her name. In 2002, the funds were transferred to Account No. 300.892, an account at the same bank held in the name of Feghi's mother, Malous Rafei. Rafei's account later became known as EFG Bank von Ernst AG Account No. 400882 ("the Account"). It currently contains a balance of approximately $800,000. Suspecting money laundering,

the Princely Court of Liechtenstein entered a restraining order freezing the funds in the Account ("the Liechtensteiner restraining order") while the United States investigated the matter.

Following an investigation, the government moved this Court to enter a restraining order freezing the funds in the Account. In support of its motion, the government proffered evidence that a check in the amount of $400,000, made payable to Malous Rafei and drawn on a Canadian bank account linked to the money laundering investigation, was deposited into the Account in February, 1995. Having found probable cause to believe that the restrained funds were subject to forfeiture under the 1995 forfeiture order, this Court issued an <u>ex parte</u> restraining order in July 2010 ("the 2010 restraining order"), pursuant to Title 18 of the United States Code, §§ 1963(e) and 982(b)(1) (incorporating 21 U.S.C. § 853(g)). The Account remains frozen pursuant to the 2010 restraining order and the Liechtensteiner restraining order. The government has not yet moved to forfeit the funds in the Account and has represented that it seeks to maintain the status quo until receiving additional information from Liechtensteiner authorities.

In June 2011, the movants filed a motion to vacate or, in the alternative, to modify the 2010 restraining order. They claim that at least some of the contents of the Account are unrelated to Yerardi's racketeering operation and were bequeathed

to them by their late grandmother, Malous Rafei. The government opposes the motion. The movants have twice renewed their motion and request an evidentiary hearing.

## II. Standing

Before considering the merits of their claim, the Court must first decide whether the movants have standing to bring it.

### A. Standard

Standing is a threshold issue that must be resolved before the merits of a case are adjudicated. United States v. Union Bank for Sav. & Inv., 487 F.3d 8, 22 (1st Cir. 2007). To establish standing, a litigant must show that 1) there is a concrete and particularized injury, 2) the injury is fairly traceable to the defendant's conduct and 3) a favorable decision will likely redress it. See Massachusetts v. EPA, 549 U.S. 497, 517 (2007). At the outset, a litigant need only show

> a facially colorable interest in the proceeding to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court.

Bingham v. Massachusetts, 616 F.3d 1, 35 (1st Cir. 2010).

In cases implicating a person's standing to contest the forfeiture of property, standing is established as long as the litigant has a "colorable" interest in the property, United States v. Contents of Accounts Nos. 3034504504 & 144-07143, 971 F.2d 974, 985 (3rd Cir. 1992), and an "actual stake in the outcome of the suit," United States v. 5 S 351 Tuthill Rd., 233

F.3d 1017, 1023 (7th Cir. 2000) (describing Article III standing requirements as "undemanding" in the forfeiture context).

**B. Application**

The movants claim that the contents of the Account were devised to them by their Iranian grandmother, Malous Rafei, and that their interest as would-be heirs is sufficient to confer standing. Attached in support of their motion are a copy of the will, letters of confession and sworn affidavits. The government responds that the movants lack standing because they currently have no ownership in or control over the Account.

The Court will not parse the intricacies of Iranian probate law to describe the specific kind of interest held by the movants because it is evident that they have a colorable interest in the Account and an actual stake in the outcome of this dispute. See Hodel v. Irving, 481 U.S. 704, 711 (1987) (holding that heirs had standing to challenge statute preventing them from receiving their inheritance in part because they were "situated to pursue the claims vigorously"); Bingham, 616 F.3d at 5-6 (denying standing to descendants of Mashpee Wampanoag Tribe where, unlike here, the document through which the property interest was passed did not identify plaintiffs as heirs). Indeed, it appears that the restraining orders are the very mechanism currently preventing the movants from turning their interest in the funds into a possessory and ownership interest.

The government objects on the grounds that even a favorable decision of this Court would not redress the movants' claimed injury. The government submits that even if this Court were to rescind the 2010 restraining order, the funds in the Account would remain frozen under the terms of the Liechtensteiner restraining order. In response, the movants have submitted an uncontested affidavit from Rudolf Schächle, an Austrian attorney, who attests that if this Court were to vacate or modify the restraining order on the Account, the Liechtenstein Court would likely follow suit because it has relied, at least in part, on this Court's 2010 restraining order as the basis for maintaining its restraining order. The movants also call attention to the fact that the Liechtensteiner restraining order is set to expire in September 2012, while the 2010 restraining order has no set expiration date.

The movants have the better of the argument. Even if the Liechtensteiner restraining order were not immediately rescinded following the dissolution of the 2010 restraining order, it would expire in less than one year, thereby enabling the movants to act upon their interests in the Account. Having found that the movants have standing to pursue the instant action, the Court proceeds to consider the question of whether they are entitled to an evidentiary hearing.

## III. **Evidentiary Hearing**

The 2010 restraining order was entered pursuant to 18 U.S.C. § 1963(e) and 21 U.S.C. § 853(g), which separately authorize a district court, following the conviction of a defendant under RICO and a corresponding entry of forfeiture, to enter a restraining order to protect the interest of the United States in the property ordered forfeited. In this case, the Court ordered the Account frozen pending further investigation into the source of the funds to protect the government's interest in collecting the unpaid $916,000 forfeiture judgment against Yerardi. Absent such a restraint, the Court found, there is a substantial risk that the funds would not be preserved. In the intervening two years, the government has not sought to forfeit the funds in the Account.

The movants ask the Court to vacate the 2010 restraining order or, in the alternative, to modify the order so as to release everything in excess of $400,000. They reason that the government's probable cause extends only as far as the $400,000 linked to the Canadian Assets, less than half of the funds in the Account. Because the government purportedly has no reason to believe that the remainder of the funds are linked to criminal activity, those funds arguably should not be subject to restraint. The movants seek an evidentiary hearing to contest the attachment.

### A. Standard

When the government seeks a restraining order to freeze property alleged to be subject to forfeiture, third parties asserting an interest in that property must be afforded notice and an opportunity for a hearing to contest it. 21 U.S.C. § 853(e)(1)(B); United States v. Real Property in Waterboro, 64 F.3d 753, 755 (1st Cir. 1995). Third parties asserting an interest in already-forfeited property likewise have the right to a hearing to challenge the validity of the forfeiture order. 21 U.S.C. § 853(n)(2); 18 U.S.C. § 1963(l)(2). The question remains, however, whether third parties are entitled to a hearing to adjudicate their alleged interest in property <u>after</u> it has been attached but <u>before</u> it has been ordered forfeited.

Perhaps assuming that the interval between restraint and forfeiture would be brief, Congress did not specifically address this issue in the relevant forfeiture statutes. To fill the void, some Courts have resorted to the Constitution, concluding that the Due Process Clause is violated when third parties are not given an opportunity to challenge a post-indictment restraining order until after forfeiture has been ordered. See United States v. Harvey, 814 F.2d 905, 929 (4th Cir. 1987) (concluding that the forfeiture statute at issue contravenes procedural due process "to the extent [that it] authorizes the issuance of ex parte restraining orders . . . without any post-deprivation hearing");

United States v. Crozier, 777 F.2d 1376, 1382-84 (9th Cir. 1985) (explaining that third parties with an interest in restrained property must be afforded the opportunity to be heard "at a meaningful time and in a meaningful manner"). The First Circuit has expressly declined to address this issue:

> [W]e do not consider[] whether the Due Process Clause may sometimes require that interested parties be given an opportunity to challenge a restraining order . . . before the entry of an order of forfeiture.

Real Property in Waterboro, 64 F.3d at 757. It has, however, described a restraining order freezing third-party assets as "strong medicine." Id. at 755-56.

Without a bright-line rule to govern the situation, the Court turns to Mathews v. Eldridge, 424 U.S. 319 (1976) for guidance on the pertinent factors to consider when evaluating whether considerations of due process require a hearing. In accordance with its teaching, this Court will consider 1) the private interest at stake, 2) the risk of erroneous deprivation and 3) the burden on the government in holding a hearing. Id. at 335. In other words, the Court will balance the interests of the individuals who have allegedly been deprived of their property with the interest the government is seeking to protect.

### B. Application

The Eldridge factors counsel in favor of holding an evidentiary hearing in this case. As discussed previously, the movants have established their interest in the Account and there

is no real dispute that the kind of interest here is subject to constitutional protection.

Turning to the second factor, the Court agrees with the movants that the risk of erroneous deprivation is substantial. The evidence proffered in support of restraint, while sufficient to establish probable cause with respect to part of the Account, does not necessarily suffice for the entire Account. Moreover, the government has done very little to supplement that evidence in the intervening years since the Account was attached and does not appear to be in any rush to forfeit the assets. Indefinite restraint, from the perspective of the movants, is no better than forfeiture itself.

The third factor likewise weighs in the movants' favor. The government claims that if the restraining order on the entire account were to be vacated, the movants would withdraw the balance and thereby foreclose the government from collecting funds to which it may later become entitled. While that may be true, the salient issue is whether and to what extent a hearing would impose a burden, not whether the relief, if granted, would irrevocably harm the government. Under the circumstances of this case, the burden of holding a hearing appears to be minimal.

**ORDER**

In accordance with the foregoing, the Motion to Vacate, or in the Alternative, to Modify the Court's July 28, 2010 Order and For an Evidentiary Hearing filed by non-parties Amir Kavyon Bina and Joseph Kaveh Yerardi (Docket No. 640) is **ALLOWED**, in part, but **DENIED**, in part. The restraining order shall remain in place but a hearing will be convened on Wednesday, May 23, 2012, at 2:30 p.m. in Courtroom 4 to determine whether the government will be permitted to continue to restrain EFG Bank von Ernst AG Account No. 440882 indefinitely without evidence that the balance of the Account in excess of $400,000 was, in some way, linked to criminal activity. The validity of the restraining order will not be adjudicated at the hearing, the scope of which will be limited to equitable arguments concerning the propriety of restraining the entire account.

**So ordered.**

                                          /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated May 8, 2012